

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CASE NO.: CR205-36 |
| v. ) | |
| ) | |
| ) | |
| EDMUND PENDLET POWELL ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Edmund Pendlet Powell ("Powell") is charged with violating 18 U.S.C.A. § 472, possession of counterfeit currency. Powell filed a Motion to Suppress statements he made to James Edward Floyd, a fellow inmate. The undersigned conducted an evidentiary hearing on October 31, 2005, at which Secret Service Special Agents Brian Truax and Jeff Thomas, Glynn County Police Detective Mike Hullihan, Powell, and James Edward Floyd testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

James Edward Floyd ("Floyd") was arrested for possession of counterfeit currency in early June 2005 and was detained at the Glynn County Police Department; this is the same facility in which Powell was being detained. Floyd testified that he met Powell about two (2) weeks after he was arrested, and Powell asked Floyd about the charges he faced and his bond. Floyd testified that Powell freely gave him information concerning his case.

AO 72A
(Rev. 8/82)

Agent Brian Truax ("Truax") came to speak with Floyd on July 8, 2005, about his case. During the time when Floyd was in an interview room with Truax, Floyd saw Powell through the window on his way to another interview room. Upon seeing Powell, Floyd informed Truax that officers did not need to worry about him but needed to worry about people like Powell. At that time, Floyd relayed to Truax what Powell had revealed to him about two weeks before this meeting. Floyd stated that Truax listened to what he had to say but did not ask him anything. Floyd agreed to provide Truax with a written statement[1] of what Powell told him. Floyd testified that Truax did not tell him that he would receive favorable treatment in his case for the information Floyd provided about Powell; Floyd also testified that no one else promised him that he would receive favorable treatment as a result of providing this statement.

Truax testified that he went to the Glynn County Police Department on July 8, 2005, to speak with Powell and Floyd separately regarding the charges pending against each of them. Truax stated that he was in an interview room with Floyd for approximately 30 minutes when Floyd identified Powell, who walked past the window, as someone he knew who was undergoing the same thing he was. Truax testified that Floyd told him that Powell spoke to him about two weeks prior; Floyd then told Truax the information Powell relayed to him. Truax asked Floyd if he wanted to provide a written statement, and Floyd stated that he did. Truax testified that he did not make any promises to Floyd in return for his statement but did tell Floyd that he would present the statement to the Assistant United States Attorney prosecuting his case, as well as to Floyd's attorney. Truax testified that

---

[1] A copy of Floyd's statement is attached to Powell's Motion (Doc. No. 38, Ex. 2), and the undersigned need not recite what is contained in this statement.

he did not ask Floyd to be a government agent against Powell and that he was not aware of anyone else asking Floyd to be a government agent.

Detective Mike Hullihan ("Hullihan") of the Glynn County Police Department testified that he never heard of James Edward Floyd prior to receiving notice of the hearing on this matter. Hullihan also testified that he has never spoken with Floyd, nor has he ever directed anyone to speak to Floyd.

## ISSUE PRESENTED

Powell asserts that the Government solicited Floyd, either expressly or implicitly, to obtain statements from him. Powell also asserts that Floyd was acting as an agent for the Government when he solicited statements from him, and thus, any statements he allegedly made to Floyd should be excluded from the trial of this case.

## DISCUSSION AND CITATION TO AUTHORITY

For a criminal defendant to succeed on his claim that the admission of statements made to another inmate violated his Fifth Amendment right against compelled self-incrimination, "[he] must demonstrate as an initial matter that the facts surrounding [his] inculpatory statement amounted to a custodial interrogation." United States v. Stubbs, 944 F.2d 828, 831 (11th Cir. 1991) (internal citation and punctuation omitted). "In Illinois v. Perkins, 496 U.S. 292, 110 S. Ct. 2394, 110 L. Ed.2d 243 (1990), the Supreme Court upheld the admission of a 'jailhouse confession' made to an undercover law enforcement agent posing as a cellmate and made clear that there can be no 'custodial interrogation' absent some official, law enforcement-sponsored coercion." Id. "The essential ingredients

3

of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." Perkins, 496 U.S. at 296, 110 S. Ct. at 2397 (internal citations omitted). "'Miranda[ v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966),] and Fifth Amendment concerns are not implicated when a defendant misplaces [his] trust in a cellmate who then relays the information--whether voluntarily or by prearrangement--to law enforcement officials.'" United States v. Grimes, 142 F.3d 1342, 1349 (11th Cir. 1998) (quoting Stubbs, 944 F.2d at 832).

There is no evidence before the Court that Floyd was acting as a government agent when Powell made allegedly inculpatory statements to him. What the evidence does show, however, is that Powell approached Floyd while the two men were incarcerated at the Glynn County Police Department and volunteered information to Floyd about his case. The evidence also shows that Floyd was never approached by Truax, Hullihan, or any law enforcement official to elicit incriminating information from Powell. Furthermore, the evidence shows that Floyd provided a written statement pertaining to the conversation Powell initiated with him to Truax voluntarily and that Floyd was not promised any favorable treatment in return for this statement. Accordingly, Powell's statements made to Floyd are not subject to suppression.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Powell's Motion to Suppress the statements he made to James Edward Floyd (Doc. No. 38) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 3rd day of November, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)