IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO.: CR205-36 |
| v. ) | |
| ) | |
| EDMUND PENDLET POWELL ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Edmund Pendlet Powell ("Powell") is charged with violating 18 U.S.C.A. § 472, possession of counterfeit currency. Powell filed a Motion to Suppress statements made to law enforcement officials, and the Government responded. The undersigned conducted an evidentiary hearing on October 31, 2005, at which Secret Service Special Agents Brian Truax and Jeff Thomas, Glynn County Police Detective Mike Hullihan, Powell, and James Edward Floyd testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

On February 5, 2005, Detective Mike Hullihan ("Hullihan") of the Glynn County Police Department arrested Powell for possession of counterfeit currency and transported him to the Glynn County Police Department. Hullihan contacted Special Agent Brian Truax ("Truax") of the Secret Service in Savannah, Georgia, about this case. Truax and Special Agent Jeff Thomas ("Thomas"), who is also with the Secret Service in Savannah and is Truax's supervisor, traveled to Brunswick. Truax and Hullihan interviewed Powell at the

Glynn County Police Department. Thomas observed the interview in a viewing room from which he was able to hear clearly all of the questions asked of Powell and his responses thereto. Truax read the Miranda[1] warnings from a card to Powell. Powell stated that he understood his rights and was willing to speak with Truax and Hullihan. Truax also provided Powell with a written version of the Miranda warning, which contains a section regarding an interviewee's waiver of his rights. Powell read the form and understood it; however, Powell refused to sign the form. Truax, Thomas, and Hullihan testified that, although Powell would not sign the waiver form, he agreed to speak with Truax and Hullihan. Truax and Thomas testified that they did not recall Powell ever indicating that the reason he would not sign the form was because he wanted an attorney or lawyer; Hullihan testified that Powell "indicated" that he would speak to the officers without an attorney, but he did not recall Powell using the words "attorney", "lawyer", or "counsel" at any other time during the interview. Truax, Thomas, and Hullihan testified that Powell never informed the officers that he wanted an attorney, that he wanted to stop the interview, that he wished to remain silent, or that he wanted to take a break. These three men also testified that Powell was not coerced or threatened to answer the officers' questions. The interview lasted approximately 30 to 60 minutes. Pursuant to Secret Service policy, this interview was not recorded.

While Powell testified that he would not sign the form because he stated that he wanted an attorney, the Court does not find this testimony to be credible as it directly contradicts the believable testimony of Truax, Thomas, and Hullihan.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

## DISCUSSION AND CITATION TO AUTHORITY

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed.2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.

"As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. A waiver is effective where the 'totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension.'" United States v. Goodman, 2005 WL 2077073, at *5 (11th Cir. Aug. 29, 2005) (unpublished) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed.2d 410 (1986)). "[T]he burden of showing admissibility rests . . . on the prosecution. The prosecution bears the burden of proving, at least by a preponderance of the evidence, the Miranda waiver and the voluntariness of the confession." Missouri v. Seibert, 542 U.S. 600, ___, 124 S. Ct. 2601, 2608 n.1, 159 L. Ed.2d 643 (2004) (internal citations and punctuation omitted). "[A]n arrestee's refusal to sign a waiver of rights form is not enough to constitute an invocation of rights." United

States v. Acosta, 363 F.3d 1141, 1154 (11th Cir. 2004) (citing United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir. 1987)).

In the case *sub judice*, it is undisputed that Powell was given his Miranda warnings verbally and allowed to read a form which listed these rights. The credible evidence reveals that Powell understood these rights. The credible evidence also establishes that Powell waived his Miranda rights, and said waiver was made knowingly and voluntarily. Powell testified that he read the written version of his Miranda rights which Truax provided him and that he understood these rights. Truax and Thomas testified that Powell refused to sign the waiver of rights form but nonetheless agreed to speak with Truax and Hullihan after being advised of his Miranda rights verbally and in written form. Hullihan testified that Powell indicated that he was willing to speak to him and Truax without an attorney after being advised of his Miranda rights. These officers also testified that Powell never indicated during this interview that he wished to have a lawyer present or to remain silent. Truax, Thomas, and Hullihan testified that Powell was not coerced or threatened in any way, nor was he promised anything to make a statement to the officers. These officers further testified that Powell never indicated that he wanted to take a break at any time during the interview; the interview lasted no longer than one hour, and Truax's and Hullihan's testimony was that the interview lasted approximately 30 to 45 minutes. Truax, Thomas, and Hullihan testified that, while Powell would not sign the waiver of rights form, he nonetheless told Truax and Hullihan that he would speak to them. Simply because Powell would not sign the waiver form does not mean he invoked his Miranda rights. See Acosta, 363 F.3d at 1154. Based on the totality of the circumstances, Powell waived his Miranda rights, and this waiver was made knowingly and voluntarily.

4

## CONCLUSION

For the foregoing reasons, it is my **RECOMMENDATION** that Powell's Motion to Suppress statements given to law enforcement officials (Doc. No. 12) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 3rd day of November, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)